CORNELIA W. MATTHEWSON v. CLINTON L. CALDWELL, Assignee of Angell Matthewson and F. H. Snyder.

No. 10493.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—*that assignors treated alleged collaterals as still their own, not admissible, in chief, for assignee, against creditor asserting pledge, unless such conduct was with creditor's knowledge.* Where the issue between the assignee of an insolvent partnership and a person claiming some of its securities as collateral to a debt, was whether the partners had in good faith deposited the securities, for the benefit of the creditor, in a bank vault to which they had access, and the burden of proof of such issue was upon the assignee, it

was error to allow him to prove, in the making of his case in chief, that some of the partners had handled and treated the securities as still belonging to the firm, without also proving knowledge of such acts by the creditor and lack of dissent by him, such evidence not having been drawn out on cross-examination of the partner nor offered in impeachment of his testimony.

2. —————— *assignee's allowance of claim, conclusive upon him in a collateral proceeding.* Under the assignment law (Gen. Stat. 1897, ch. 111, § 28) the allowance of a claim by an assignee is binding upon him unless afterwards set aside for sufficient cause in a direct proceeding, and he cannot after such allowance litigate in a collateral proceeding the existence or amount of such claim.

3. DELIVERY OF SECURITIES AS COLLATERAL—*sufficient, where otherwise valid, though securities left in vault of pledgor bank.* A valid delivery of promissory notes as pledges may be made by separating them from other like notes, placing them in a package with a memorandum of the terms of the pledge, pointing them out to the pledgee and securing her assent to the transaction, delivering them to her husband in her presence as her agent, although he was also one of the pledgors, and then placing them in the hands of an employee of the pledgors, with instructions as to their care assented to by the pledgee, one of which instructions was to keep them in a bank vault to which the pledgors had access.

4. VARIOUS ERRORS—*considered.* Errors in the rejection of evidence, in certain instructions to the jury, in inconsistencies between special findings of the jury, and in findings by it contrary to the evidence pointed out and commented upon.

Error from Labette District Court. A. H. Skidmore, Judge. Opinion filed February 5, 1898. *Reversed.*

*Kimball & Osgood,* for plaintiff in error.
*M. Byrne,* for defendant in error.

DOSTER, C. J. This was an action brought by Clinton L. Caldwell, as assignee of Angell Matthewson & Company, against Cornelia W. Matthewson to recover from her possession certain promissory notes alleged to belong to the assignors, and for judgment for the amount of certain other promissory notes alleged to

belong to them, which she had collected and converted to her own use. The facts of the case, together with some antecedent history leading up to the transactions immediately in question are, that Angell Matthewson & Company was a partnership engaged in banking, lending money on real estate security, and in various other financial enterprises. Angell Matthewson, the senior member of the firm, and Cornelia W. Matthewson are husband and wife. Mr. Matthewson was indebted to his wife in the sum of twenty thousand dollars or more, for real estate conveyed by her to him. The firm of Matthewson & Company was concerned in a Water Works enterprise in Missouri requiring the use of money. To supply it with the necessary funds Angell Matthewson mortgaged a business block in the city of Parsons for ten thousand dollars and loaned the amount to the firm, taking its note therefor. As collateral security to this loan it was agreed among the partners that notes belonging to the firm to the amount of fifteen thousand dollars should be set apart for the security of the ten thousand dollar note and that upon the payment of any such collateral notes others should be substituted, so as to keep the security up to the agreed amount. This was done; collateral notes to the amount of fifteen thousand dollars were set apart, upon the package containing which the following memorandum was endorsed: "Installment bills receivable, number —— to number —— collateral to A. M's. firm note for ten thousand dollars." This package was turned over to Mr. Matthewson and placed by him in the vault of the Company's bank where he kept other securities and private papers belonging to himself and his wife. One of the firm's clerks was instructed to substitute other notes in place of such of the collateral as might be paid,

and this was done. Subsequently it was agreed among the partners that the firm note to Mr. Matthewson should be taken up and a new one for the same amount should be executed to Mrs. Matthewson, and that the collateral already pledged to secure his note should be held in like manner as security to her note, with the like agreement as to the substitution of other notes in place of such as might be paid. This was done ; the package of collateral notes was re-marked : " Installment bills receivable, number —— to number ——. Collateral to firm note to Cornelia W. Matthewson," and was placed in charge of the clerk with like instructions as before. Some time thereafter the firm became insolvent and executed an assignment of its property to the defendant in error for the benefit of its creditors. The assignee took charge of the assigned property. The plaintiff in error took the package of notes from the bank vault and refused to return it to the assignee. She subsequently presented her note against the firm for allowance by the assignee. The original amount had been reduced by payments derived from collections of the collateral, to less than nine thousand dollars, at which sum it was allowed.

The above is a summary of the undisputed facts. With the exception of some unimportant details, the only matter about which there was any substantial disagreement was the time at which the package of collateral notes was removed from the firm's bank vault. The plaintiff in error claimed that it was taken away before the deed of assignment was delivered to the assignee ; the assignee claimed that it was not removed until the lapse of several hours after the delivery to him of the assignment papers. Upon the trial a general verdict was returned in favor of the assignee, and special findings of fact were made, which each of the parties claims supports his contention.

Judgment was rendered in favor of the assignee, from which the defendant prosecutes error to this court. Numerous assignments of error are made, and upon a careful review of the case we are forced to the conclusion that most of them are well taken. We shall, however, notice only a few of those which appear to be most prejudicial.

Louis Weeks testified that sometime before the assignment, and while the package of notes lay in the bank vault, marked as before stated, as collateral to the firm's note to the defendant, one Snyder, a member of the firm, anticipating an early visit of the Bank Commissioner and an inspection by him of the assets of the bank, suggested the removal of the memorandum from the collateral for the purpose of deceiving the Commissioner, and that he and the witness made such removal. No evidence was offered tending to show that the plaintiff in error knew that this act of deception had been practiced or was contemplated, nor was the evidence offered in contradiction or impeachment of Snyder. Up to that time in the course of the trial Snyder had not testified. The evidence of the witness Weeks was not given in rebuttal of any testimony offered by any of the defendant's witnesses, but was given in behalf of plaintiff in the making of his original case. This was error. The defendant, plaintiff in error here, is not to be prejudiced by the inference deducible from such an act of spoliation of her property, performed as it was without her knowledge, by a person in nowise authorized to represent her. The testimony was inadmissible except in impeachment of Snyder after a foundation therefor had been duly laid.

1. That assignors treated alleged collaterals as still their own, not admissible, when.

As before stated, the firm's note to the plaintiff in error, less certain credits endorsed thereon, was allowed by the assignee. The record is entirely barren

of evidence tending to impeach the validity of this
note. Notwithstanding this lack of evi-
dence, and notwithstanding the previous
admission of the *bona fides* of the note,
made by the assignee in allowing it as a claim against
his trust, the court submitted the question of its *bona
fides* to the jury, and the jury, in singular disregard
of the unquestioned facts, found that the firm was not
indebted to the plaintiff in error in any amount at the
time of the assignment, and that the note given to the
plaintiff in error by the firm was wholly without con-
sideration. Of course if such answers truly stated the
facts the plaintiff in error had no indebtedness to
which the notes in question could be pledged or held
as collateral, and the demand of the assignee for their
return was rightfully made. The assignee however
admitted the allowance by him of the claim of the
plaintiff in error upon the note executed to her by the
firm. His excuse for now contesting such note is
that he allowed it in ignorance of its lack of consider-
ation. This excuse, even if proved to be well founded,
cannot avail him in a collateral proceeding such as
this. The statute (Gen. Stat. 1897, ch. 111, § 28) de-
clares :

*2. Assignee's allow-
ance conclusive,
when.*

"The decision of the assignee in relation to all
claims presented to him for allowance shall be final,
unless a creditor or some other person interested shall
after a decision is made on any such claim ask an
appeal therefrom ; and all appeals so asked shall be
allowed by such assignee to the district court of the
county having jurisdiction thereof."

Under this Statute the adjudication made by the
assignee himself is final upon him, unless vacated by
appeal or in some appropriate direct proceeding, and
the existence and amount of the claim thus found by
him to be due could not be made issues upon the trial
of this case.

The plaintiff in error offered evidence tending to prove the assignee's assent to the holding and collection of the collateral notes by her and the application of the proceeds of their collection to the payment of her debt. This offer was rejected, and erroneously as we think. It was competent as an admission by the assignee of her right to the subject-matter of the action. It would not, perhaps, have constituted an estoppel upon the assignee, but it was competent as an admission by him against the right of the contention he was then urging.

There is an irreconcilable conflict between many of the findings of the jury. For instance, it was found that the firm's note to Mr. Matthewson was given for a valuable consideration and secured, as before stated, by a pledge of collateral; that it was subsequently surrendered and a new note in lieu of it given to Mrs. Matthewson with the same agreement as to security, and yet, as before stated, the jury further found that such last mentioned note was without consideration, and that the firm was not indebted upon it at the time of the assignment; but it was further found that such note to Mrs. Matthewson had been paid prior to the assignment. Besides the inconsistencies between these findings, which would be sufficient of themselves to require a reversal of the case, none of such findings tending to impeach the note in Mrs. Matthewson's hands are supported by any evidence. Practically the only claim the defendant in error makes in support of the judgment of the court below is, that there was no valid delivery of the collateral notes as pledges for the payment of the principal note. The evidence is uncontradicted that upon the making of the note to Mrs. Matthewson the collateral notes were placed in the hands of her husband, as her agent, for the purposes of security, and were by him placed in the vault

of the firm's bank, marked, as before stated, with a memorandum to the effect that they were collateral to her note ; and one of the bank clerks was given special charge of them, with directions to substitute other notes in place of such as might thereafter be paid. The defendant in error contends that these notes not being removed from the place where they had been kept, or otherwise placed beyond the reach of the firm, but remaining in the receptacle where other like property of the firm was kept, there was no valid delivery of them as pledges.

It is true that in order to the taking effect of a contract of pledge there must be a delivery of the thing pledged — there must be change of possession from the pledgor to the pledgee. There was, in this case, such change of possession, such delivery of the pledge as to satisfy the requirements of the law. Mr. Matthewson, although one of the pledgors, was also the agent of his wife, authorized to care for her property. He and his partners, as debtors to Mrs. Matthewson, separated the notes in question from others of like kind, and placed upon them an identifying memorandum specifying the purpose for which they had been set apart. They were then put in charge of a disinterested third person. The fact that the pledgors had access to the place where the pledges were kept, and could have violated the terms of the pledge, constitutes no sufficient reason for holding that the contract never took effect.

The case of *Casey v. Cavaroc*, ( 96 U. S. 467,) is somewhat like this in point of fact, and in it a view contrary to the one herein expressed was taken. There is, however, two distinguishing differences between it and the case we have for consideration. In that case no memorandum was entered upon the package of collateral notes to show that they had been pledged.

3. Delivery of securities as collateral sufficient, when.

They were simply separated from others of a like kind and placed by themselves without any identifying mark. In this case the notes were not only separated and placed by themselves, but a memorandum explanatory of the reason for their separation and for placing them aside was made, which memorandum disclosed in general terms the contract made with respect to them.

Again, on the day the firm's note was given to Mrs. Matthewson in place of the one previously given to her husband, she was in the bank, the contract of novation was explained to her, the note and accompanying collateral were exhibited to her and she gave her assent to the transaction. No facts of similar kind existed in *Casey v. Cavaroc*, supra. Nearly all the authorities are to the effect that, if the pledgee receives manual possession of the pledge, its return to the pledgor as special bailee or agent may be made without impairing the validity of the contract of pledge. Jones on Pledges, §§ 40–44. Had Mrs. Matthewson taken the pledges into her hands with intent to possess and keep them and the next moment returned them to her husband or any other member of the firm to care for them as her agent, the requirements of the law would have been satisfied. They were equally satisfied by the act of the pledgors, the firm, in pointing out the pledged property to her, with explanation of the right to it which they had conferred upon her, and obtaining her assent to the transaction.

Other errors, not necessary however to elaborate upon, were committed by the court in the trial of the case. For instance, it was error for the court to say to the jury, as was done in one of the instructions, 4. Various errors considered. "that it had been impaneled only for the purpose of answering certain special questions of fact, which will be submitted," while at

the same time the court authorized the jury to return a general verdict. The giving of this instruction doubtless magnified in the mind of the jury the making of the special findings as the essential duty to be performed, and the return of the general verdict as largely a matter of form. Another of the instructions was erroneous, as also the admission of the testimony upon which it was based. Evidence had been offered by defendant in error, plaintiff below, that Mr. Matthewson had paid his indebtedness due his wife by certain conveyances of real estate. Upon the question whether the firm was indebted to her at the time of the assignment, the instruction in question indicated to the jury that these payments by Mr. Matthewson of his own debt might be taken into account, and in all probability this instruction led to the making of the finding heretofore noticed that the firm was not indebted to the plaintiff in error at the time of the assignment. Another instruction authorized the jury to find for the plaintiff, if it were true that at the time of the assignment the collateral notes "were not in the manual and actual possession of Angell Matthewson." These and other like rulings of the court, together with those first and more particularly noticed, constrain us to believe that such substantial wrongs were done to the plaintiff in error upon the trial of the case as to justify a reversal of the judgment. Such reversal is accordingly ordered with instructions to proceed in accordance with the views expressed herein.